# UNITED STATES DISTRICT COURT

for the
Western District of Arkansas
Fayetteville Division

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

JAN 16 2020

DOUGLAS F. YOUNG, Clerk
By _____ Deputy Clerk

In the Matter of the Search of            )
1513 S. Dixieland Road 68A                )   Case No. 5:20 CM 07
Rogers, AR 72758                          )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe property to be searched and give its location)*: **See Attachment A.**

located in the Western District of Arkansas, there is now concealed *(identify the person or describe the property to be seized)*: **See Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2252/2252A | Possession/Distribution of Child Pornography |

The application is based on these facts:

√ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Thomas Wooten, TFO Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/16/2020

*Judge's signature*

City and state: Fayetteville, Arkansas         Erin L. Wiedemann, Chief United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A
## DESCRIPTION OF PROPERTY TO BE SEARCHED

Any and all areas of **1513 S. Dixieland Road 68A, Rogers, Arkansas 72758** (the "SUBJECT PREMISES"), more particularly described as a single-story long-term care facility with brown colored bricks and a white flat roof. The SUBJECT PREMISES is located on the inside of the building marked 68A.



## ATTACHMENT B
## ITEMS TO BE SEARCHED FOR AND SEIZED

a. Images of child pornography, including any and all digital images stored on devices capable of such, and files containing images of child pornography in any form wherever it may be stored or found including, but not limited to:

    i. any and all computer hardware and software capable of storing, accessing, sending or receiving digital information, computer system, computer tablet, smart phones, micro SD cards, and related peripherals, or any other device capable of accessing the internet and/or storing digital data; tapes, cassettes, cartridges, streaming tape, commercial software and hardware, internal or external storage devices, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, scanners, computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG), and any electronic data storage devices including, but not limited to cellular telephones, hardware, software, diskettes, backup tapes, CD-ROMS, DVD, Blue Ray players, Flash memory devices, and other storage mediums; any input/output peripheral devices, including but not limited to passwords, data security devices and related documentation, and any hardware/software manuals related to or used to: visually depict child pornography; contain information pertaining to the interest in child pornography; and/or distribute, receive, or possess child pornography, or information pertaining to an interest in child pornography, or information pertaining to an interest in child pornography;

    ii. any and all applications (apps) contained on any electronic device, books and magazines, digital or otherwise, containing visual depictions of minors engaged in sexually explicit conduct or involving the physical description of sexual activity involving minors

    iii. originals, copies, and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

    iv. motion pictures, films, videos, film negatives, digital or print copies, and other recordings of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

b. information or correspondence pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, that were transmitted or received using computer or any internet capable device, or any other

facility or means of interstate or foreign commerce, common carrier, or the U.S. mail including, but not limited to:

   i. envelopes, letters, electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

   ii. books, records, and any other written or digital information bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

c. Any and all credit card information including but not limited to bills and payment records for subscription to internet or non internet-based companies allowing access to images of minors engaging in sexually explicit activities, or reflecting the purchase of or access to any material related to child pornography;

d. Any and all correspondence pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256 whether transmitted or received using computer, a facility or means of interstate commerce, common carrier, or mail.

e. Any and all computer-related documentation to include written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, software, or other related items. In addition to passwords, to include alphanumeric strings, pass-phrases, password files, and similar decryption codes necessary to access data that is encrypted or otherwise inaccessible.

f. Any and all security devices, to include physical keys, encryption devices, "dongles", and similar physical items needed to gain access to associated computer hardware. In addition, peripherals, equipment that send data to, or receive data from, computer hardware, but do not normally store user data, such as keyboards, mice, printers, scanners, plotters, video display monitors, modems, cables, and certain types of facsimile machines.

g. Any and all address books, names, and lists of names and addresses of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

h. Any and all diaries, notebooks, notes and any other electronic records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, and Section 2256.

k. In searching the data, the computer personnel may copy all of the data contained in the computer equipment and storage devices. In doing so, the search is authorized to allow the

computer personnel to recover and examine: all images contained upon any seized device wherever they may be found, a search of unallocated spaces for images related to child pornography, a search to identify Peer-to-Peer programs, a search of terms related to child pornography, and any other search and examination that would reveal the existence of child pornography on the seized item including deleted, hidden, accessing applications (apps), and/or encrypted data. Emails, data files, and any other electronic information related to the ownership of the seized electronic media may be copied, imaged and examined during purposes of conducting the forensic examination.

## ATTACHMENT C

## Affidavit in Support of Application for Search Warrant

I, Thomas Wooten, being duly sworn, depose and state as follows:

1. I am a Task Force Officer with the Department of Homeland Security, Homeland Security Investigations ("HSI"), currently assigned to the Assistant Special Agent in Charge Office in Fayetteville, Arkansas. Since June of 2000, I have been a police officer / detective with the Springdale, Arkansas Police Department. As such, I am authorized by the State of Arkansas to apply for and execute search warrants, arrest warrants and other instruments of the court. As a police officer / detective, I have received specialized training in matters related to criminal investigation, specifically but not limited to the area of sexual exploitation of minors, drug distribution, and money laundering. Since August of 2017, I have been assigned as a Task Force Officer to Homeland Security Investigations (HSI), a component of the U.S. Department of Homeland Security. As a Task Force Officer (TFO) with HSI I primarily investigate crimes related to the sexual exploitation of minors. Prior to joining HSI, I attended a 40-hour training session covering Title 8, Title 18, Title 19 and Title 21 of the United States Code. As such, I am a law enforcement officer within the meaning of Section 115(c)(1) of Title 18 United States Code, who is authorized by law or Government agency to engage in or supervise the prevention, detection, investigation and/or prosecution of any violation of Federal and State criminal law. Since joining HSI as a taskforce officer, your Affiant has received training in Cellebrite Mobile Forensics, Passmark Software/OSForensics Triage tools, and has obtained certifications as a Cellebrite

Certified Operator, Cellebrite Certified Physical Analyst and OSForensics Triage Operator.

2. This Affidavit is being submitted in support of an application for a search warrant for the premises located at **1513 S. Dixieland Road 68A, Rogers, Arkansas 72758** the "**SUBJECT PREMISES**". As such, it does not include all of the information known to me as part of this investigation, but only information sufficient to establish probable cause for the requested search warrant.

## Statutory Authority

3. This investigation concerns alleged violations of Title 18, United States Code, Sections 2252 and 2252A, relating to material involving the sexual exploitation of minors, which has been defined in Title 18 U.S.C. 2256, as an individual under 18 years of age.

   a. Under 18 U.S.C. Section 2252(a)(1) (transportation), 2252(a)(2) (receipt and distribution), and 2252(a)(4)(B) and 2252A(a)(5)(B) (possession), it is a federal crime for any person to transport, distribute, receive, and possess child pornography, as that term is defined by federal law. Further under 18 U.S.C. Section 2253(a)(3), a person who is convicted of an offense under 18 U.S.C. Section 2252 or 2252A, shall forfeit to the United States such person's interest in any property, real or personal, used or intended to be used to commit or to promote the commission of such offense.

## Computers and Child Pornography

4. Based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, I know that computers and computer technology

2

have revolutionized the way in which child pornography is produced, distributed and utilized. Prior to the advent of computers and the Internet, child pornography was produced using cameras and film, resulting in either still photographs or movies. The photographs required darkroom facilities and a significant amount of skill in order to develop ad reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these images on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls, and compensation for these wares would follow the same paths. More recently, through the use of computers and the Internet, distributors of child pornography use membership-base/subscription-based websites to conduct business, allowing them to remain relatively anonymous.

5. In addition, based upon my own knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, I know that the development of computers has also revolutionized the way in which those who seek out child pornography are able to obtain this material. Computers serve four basic functions in connection with child pornography: production, communication, distribution, and storage. More specifically, the development of computers has changed the methods used by those who seek to obtain access to child pornography in these ways.

6. Producers of child pornography can now produce both still and moving images directly from a common video or digital camera. The camera is attached, using a device such as

3

a cable, or digital images are often uploaded from the camera's memory card, directly to the computer. Images can then be stored, manipulated, transferred, or printed directly from the computer. Images can be edited in ways similar to how a photograph may be altered. Images can be lightened, darkened, cropped, or otherwise manipulated. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. In addition, there is an added benefit to the pornographer in that this method of production does not leave as large a trail for law enforcement to follow.

7. The Internet allows any computer to connect to another computer. By connecting to a host computer, electronic contact can be made to literally millions of computers around the world. A host computer is one that is attached to a network and serves many users. Host computers are sometimes operated by commercial Internet Service Providers (ISPs), which allow subscribers to dial a local number and connect to a network which is, in turn, connected to the host systems. Host computers, including ISPs, allow e-mail service between subscribers and sometimes between their own subscribers and those of other networks. In addition, these service providers act as a gateway for their subscribers to the Internet or the World Wide Web.

8. The Internet allows users, while still maintaining anonymity, to easily locate (i) other individuals with similar interests in child pornography; and (ii) websites that offer images of child pornography. Those who seek to obtain images or videos of child pornography can use standard Internet connections, such as those provided by business, universities, and government agencies, to communicate with each other and to distribute child pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as

desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions involving those who wish to gain access to child pornography over the Internet. Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache to look for "footprints" of the websites and images accessed by the recipient.

9. The computer's capability to store images in digital form makes it an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as a "hard drive") used in home computers has grown tremendously with the last several years. Hard drives with the capacity of 160 gigabytes are not uncommon. These drives can store thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime." Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

## PROBABLE CAUSE

10. On October 29, 2019, an ICAC Taskforce Affiliate from the Siloam Springs Police Department obtained a copy of National Center for Missing and Exploited Children (NCMEC) CyberTipline Report No. 53877838 filed by Dropbox on or about August 20, 2019, regarding the Dropbox account associated with jakelankford888@gmail.com. On or about October 29, 2019, the Taskforce Affiliate reviewed a copy of this CyberTipline Report that

5

stated NCMEC received CyberTipline No. 53877838 from Dropbox. The CyberTip noted that the images/videos appear to contain apparent child pornography.

11. The Dropbox User Account information for the individual utilizing this Dropbox account:

>Email Address: jakelankford888@gmail.com
>Screen/User Name: Jake Lankford
>ESP User ID: 1074088272

12. CyberTipline No. 53877838 contained 115 files (videos/images), which were uploaded to Dropbox on various dates. The Taskforce Affiliate reviewed all the files and described three images/videos as the following:

Image 1: Filename hash: 22e09d42a0c9b055591fa8496029cbf9

File name: !!!(babyj-captive) (1) copie.mp4

a. This video is of a prepubescent female who has her legs spread open and tied up. There is a purple blanket covering her upper chest and face. The video shows a penis penetrating her vagina and anus. At the end of the video the man ejaculates on the child's stomach. The video is two (2) minutes and one (1) second long.

Image 2: Filename hash: b41306e8000dc05da97cbd76d38c96ca

File name: verea sisters 3yo and 4yo.mp4

b. This video is of two prepubescent females taking a bath and performing oral sex on a male's penis. The video shows a male rubbing his penis on one of the female's vagina. When the man ejaculated on the female's vagina, he pushed his penis partly into the female's vagina. The video is four (4) minutes and 43 seconds long.

Image 3: Filename hash: 9e93b375c647c8e51fef8e79f2e423bd

File name: b86ea129-50b6-4e10-b500-df86300c8d66.mp4

c. This video is of a prepubescent female performing oral sex on a male's penis. The video showed a male ejaculating into the female's mouth. The video is 16 seconds long.

6

13. On October 29, 2019, the Taskforce Affiliate provided Dropbox Legal Compliance (Dropbox) with a preservation letter for the Dropbox user account jakelankford888@gmail.com.

14. The cyber tip did not provide the upload IP addresses for the associated child pornography videos and photographs, but Dropbox advised they may be able to provide the information with a valid search warrant. The Dropbox email account also had a username of Jake Lankford with an ESP User ID 1074088272. The Taskforce Affiliate also received the Google cyber tip the same day for Jake Lankford with an email address of jakelankford88@gmail.com and phone number of 479-233-XXXX.

15. On or about October 29, 2019, an ICAC Taskforce Affiliate from the Siloam Springs Police Department also received Cyber Tip Line Report Number 55686739 from the National Center for Missing and Exploited Children (Hereinafter referred to as NCMEC), in regards to a Google account that uploaded 44 images of what is believed to be child pornography to the Google account of jakelankford88@gmail.com through Google Photos and Google Drive. The information on the suspected media containing child pornography was submitted to the Cyber Tip Line by Google Inc. On September 19, 2019 and the lead was subsequently sent to the Arkansas Internet Crimes Against Children Task Force.

16. The cyber tip did not provide the upload IP addresses for the associated child pornography photos, but Google advised they may be able to provide the information with a valid search warrant. The Google email account was also found to be associated with a telephone number of (479) 233-XXXX. Using open source information, the telephone number in question showed to be used by Jake Lankford several times to call the Siloam Springs Police Department, with the last time being August 6, 2019.

17.    The Taskforce Affiliate viewed the reported child abuse images from the Google account in question and observed 44 digital photographs depicting prepubescent white females. Approximately 40 of the digital photographs were of girls ranging between approximately three (3) years old to approximately 10 years old. The images depicted the girls exposing their vagina and breasts in a sexual manner position. The Taskforce Affiliate viewed all of the files depicting the minors and described three of these files as follows:

(a) Filename hash: 2a5c8887a395344f5d8cea10fce6babe

This image is of an approximate four (4) year old female. The image itself depicts the female lying on her back with her legs spread open with an item inserted partly into her vagina.

(b) Filename hash: 1f09d12aa77d03fca8bc7595e008d1a0

This image is of a sleeping approximate seven (7) year old female. The image itself depicts the nude female leaned back with her legs spread open exposing her vagina and breasts.

(c) Filename hash: f0beeece7b0d629f08fbb138ecfea87e

This image is of a sleeping approximate six (6) year old female. The image itself depicts the female leaned back with her legs spread open exposing her vagina. The female is wearing a shirt which is covering her breasts.

18.    During the investigation, it was determined that Jake Lankford used phone number 1-479-233-XXXX as his contact phone number with the apartment manager's office where he lives at 1255 W. Tulsa Street 18C, Siloam Springs, Arkansas. Jake Lankford has also called the Siloam Springs Police Department using the phone number 1-479-233-XXXX. Using Accurint, the Taskforce Affiliate was able to verify Jake Lankford uses the email jakelankford88@gmail.com.

19. On November 4, 2019, the Taskforce Affiliate learned Jake Lankford had moved out of the 1255 West Tulsa Street 18C, Siloam Springs, Arkansas 72761 with no forwarding address.

20. In November 2019, your Affiant sought and obtained search warrants for the Google and Dropbox accounts of Jake Lankford (5:19CM116 and 5:19CM117 respectively). Results of those search warrants obtained and viewed by the Taskforce Affiliate show evidence of child pornography in the Google and Dropbox accounts of Jake Lankford.

21. On December 3, 2019, the Taskforce Affiliate contacted Jake Lankford via phone number 1-479-233-1410. Jake Lankford stated he was now living at The Waters of Rogers (long term care facility) at 1513 South Dixieland Road 68A, Rogers, Arkansas 72758.

22. On December 6, 2019, the Taskforce Affiliate called The Waters of Rogers Facility at phone number 479-636-5841 and spoke to employee Jesse (unknown last name). Jesse confirmed Jake Lankford was living at The Water of Rogers Facility located at 1513 South Dixieland Road, Rogers, Arkansas 72758. Jesse confirmed Jake Lankford was staying in room 68A, and currently does not have a roommate.

23. On January 15, 2020, the Taskforce Affiliate made contact with The Waters of Rogers and an employee confirmed that Jake Lankford was still residing in room 68A.

24. Your Affiant is aware through his training and experience that collectors of child pornography keep their collections even when they move residences.

9

## Conclusion

25. *Necessity of On-site and Off-site examinations of entire computers or storage media.* Based on my experience and the training and experience of other agents, many of the items sought in this Affidavit may be stored electronically. Based on my experience and consultation with computer forensic experts, I know that electronic files can be easily moved from computer or electronic storage medium to another computer or medium. Therefore, electronic files downloaded to or created on one computer can be copied on or transferred to any other computer or storage medium at the same location. In addition, based on my experience, I know that searching computerized information for evidence of crime often requires special agents to seize most or all of a computer system's central processing unit (CPU), input/output peripheral devices, related software, documentation, and data security devices, including passwords, so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment. This is true because of the following:

(a) Volume of evidence: Computer storage devices such as hard disks, diskettes, tapes and laser disks, can store the equivalent of thousands of pages of information. This sorting process can take up to several months to complete, depending on the volume of data stored. Therefore, it would also be impractical to attempt this type of data search on site.

(b) Technical requirements: Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data. In any event, data search protocols are exacting

10

scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional destruction (both from external sources and from destructive code embedded in the system such as a "booby trap"), a controlled environment is essential to its complete and accurate analysis.

26. Therefore, authorization is sought in this application to seize the items set forth in attachment "B" that are found on the premises to be searched, in order to examine those items for evidence. If it is determined that data has been seized that does not constitute evidence of the crimes detailed herein, the Government will return said data within a reasonable time.

27. Based on my experience and the training and experience of other agents involved with this investigation, your affiant knows that individuals involved in the sexual exploitation of children through child pornography almost always keep copies of their sexual explicit material. Among the reasons copies are maintained is because child pornography is illegal to openly purchase, and the most common method of acquiring it is by trading with other people with similar interests. It is also known that due to the inherent illegality of these sexually explicit materials, they are most often kept in a place considered secure, usually a residence, to avoid detection by law enforcement.

28. Based on the foregoing information, probable cause exists to believe there is located at **1513 S. Dixieland Road 68A, Rogers, Arkansas 72758**, the **SUBJECT PREMISES**, evidence of violations of Title 18, United States Code, Sections 2252 and 2252A, et seq. Your Affiant prays upon her honorable court to issue a search warrant for the **SUBJECT PREMISES** for the items set forth in attachment "B" (which is attached hereto and incorporated herein by

reference), that constitute evidence, fruits, and instrumentalities of violation of Title 18, United States Code, Sections 2252 and 2252A, et seq.

_____
Thomas Wooten, Task Force Officer
Homeland Security Investigations

Affidavit subscribed and sworn to before me this ___16___ day of January, 2020.

_____
Honorable Erin L. Wiedemann
Chief United States Magistrate Judge

12